UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ZACHARY PERRIS and MARIE NIELSEN, <br><br> Plaintiffs, <br><br> v. <br><br> UBER TECHNOLOGIES, INC. and AJIT SINGH, <br><br> Defendants. | 24-CV-2698 (RA) <br><br> MEMORANDUM OPINION & ORDER |

RONNIE ABRAMS, United States District Judge:

This is another in a string of cases seeking to hold Uber Technologies, Inc. ("Uber") liable following a motor vehicle accident involving a rideshare driver. Plaintiffs Zachary Perris and Marie Nielsen ("Plaintiffs") allege that in 2022, they were cycling in downtown Manhattan when Defendant Ajit Singh, an Uber driver, collided with them while making a left-hand turn onto West Broadway. After Plaintiffs initially brought a complaint against Uber in New York State court, Uber removed the action to federal court on the basis of diversity jurisdiction. Plaintiffs then filed their First Amended Complaint, adding Singh to the action, and alleging that Uber is vicariously liable for his acts and directly liable for its own negligence. Uber now moves for summary judgment, arguing that Singh was an independent contractor, and that as a result, Plaintiffs' claims against it are barred under the independent contractor defense. For the reasons that follow, the Court agrees and grants Uber's motion for summary judgment.

**BACKGROUND**

The following facts are drawn from the Amended Complaint, the parties' Local Civil Rule 56.1 statements, declarations, and exhibits and are undisputed except as noted. The case arises from an alleged car accident at the intersection of West Broadway and Canal Street in Manhattan

on October 4, 2022. *See* Dkt. No. 9 ("First Amended Complaint" or "FAC") ¶ 2. At the time, Singh, an Uber driver licensed by the New York City Taxi and Limousine Commission ("TLC"), Dkt. No. 42-3 ("Uber's Br.") at 9; Dkt. No. 42 ("Uber's Mot."), Ex. X ("Singh Dep.") at 14:3–13, was driving his vehicle in lower Manhattan when Plaintiffs allege that he collided with them, causing them both severe injuries. *See* Am. Compl. ¶¶ 15; 44–45; Uber's Mot., Ex. Z ("Police Rep."). Singh claims that he never hit them, and that Perris threatened to accuse him of a hit and run if Singh drove away after they encountered each other in the intersection. *See* Singh Dep. at 33:19–34:14; 36:16–37:24. The police report, which describes the incident as a side swipe, states that "[n]o injuries [were] reported." Police Rep. at 2.

Plaintiffs initially filed a complaint against Uber in the Supreme Court of New York County on February 12, 2024, which Uber then removed to federal court, Dkt. No. 1 ("Notice of Removal") pursuant to 28 U.S.C. § 1446(a). Plaintiffs filed their First Amended Complaint on June 24, 2024, adding Singh to the action, and alleging that Singh negligently, recklessly, and carelessly failed to operate his motor vehicle safely, FAC ¶ 21, and that Uber was vicariously liable for Singh's negligence and directly liable for negligent entrustment of a vehicle. *Id.* ¶¶ 40–42. Uber now moves for summary judgment, seeking to dismiss Plaintiffs' claims against it in their entirety with prejudice. The Court grants Uber's motion.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 authorizes a court to grant summary judgment if the movant establishes that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008).[1] A fact is "material" if it "might affect the outcome of the suit under the governing law," and an

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, omissions, and alterations.

issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To survive summary judgment, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," and "may not rely on conclusory allegations or unsubstantiated speculation." *Bermudez v. City of New York*, 790 F.3d 368, 374 (2d Cir. 2015).

The moving party has the initial burden of demonstrating that no genuine issue of material fact exists. *See Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). If it satisfies this burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* "However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial." *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013). In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011).

## DISCUSSION

Uber raises two arguments in its motion. First, it argues that it cannot be held vicariously liable for Singh's actions because Singh was not an employee of Uber. *See* Uber's Br. at 11–22. Second, it argues that it cannot be held directly liable under a theory of negligent entrustment of the vehicle. *Id.* at 22–24. The Court addresses each in turn.

### I.  Vicarious Liability

Uber maintains that based on the undisputed facts, Singh is an independent contractor, not an employee, and thus cannot be held vicariously liable for his alleged actions. *Id.* at 12. Plaintiffs

3

counter that the question of Uber's vicarious liability hinges on contested facts regarding Uber's control of its employees, the safety measures it undertook, the data it collects, and the enforcement of its policies. *See* Dkt. No. 43 ("Pls.' Opp'n") at 2, 5–8. As many courts before it, this Court concludes that Singh functioned as an independent contractor for Uber and that as a result, Plaintiffs' claims against it are barred.

Although federal courts across the country have "differed on whether Uber's drivers are Uber's employees," *Doe v. Uber Techs., Inc.*, 551 F. Supp. 3d 341, 361 n.5 (S.D.N.Y. 2021) (collecting cases),  most courts that have had occasion to address the issue in this Circuit, along with many New York State courts, have held that drivers are independent contractors and that Uber is thus not vicariously liable for their acts, even when committed within the scope of their employment. *See e.g.*, *Kamal v. Singh*, 2025 WL 3012790, at *7 (S.D.N.Y. Oct. 28, 2025) (finding that a driver was an independent contractor, not an employee of Uber, and granting Uber's motion for summary judgment); *Bryson v. Uber Techs., Inc.*, 2026 WL 734178, at *5–6 (E.D.N.Y. Mar. 16, 2026) (same) (collecting cases); *State Farm Mut. Auto. Ins. Co. v. Diallo*, 288 Misc. 3d 1201(A), at *3 (N.Y. Civ. Ct. 2026) (same). The Court finds the majority view persuasive and concludes that Uber is not vicariously liable for Singh's alleged actions.

"The doctrine of *respondeat superior* renders an employer vicariously liable for a tort committed by his or her employee within the scope of employment." *Kamal*, 2025 WL 3012790, at *3. Employers are liable under this framework when "the employee acts negligently or intentionally, so long as the tortious conduct is generally foreseeable and a natural incident of the employment." *Id.* Individuals or entities that hire independent contractors, however, are "generally not liable for that contractor's negligent acts," under the theory that it "does not exercise sufficient control over an independent contractor's work to give rise to their liability." *Id.*

Uber argues that it lacked an employment relationship with Singh. In support, it points to the Platform Access Agreement, the contract that governed their relationship, which clearly states the relationship between Singh and Uber was "solely as independent business enterprises," and that Singh was "not an employee of Uber." Uber's Br. at 10; Uber's Mot., Ex. Y ("Platform Access Agreement" or "PAA") at 3. Plaintiffs respond that the PAA does not control and instead urge the Court to engage in a fact-intensive inquiry to evaluate the relationship between Singh and Uber. Pls.' Br. at 9. But even after engaging in an inquiry, the Court concludes that Singh was an independent contractor and not an employee, and Uber is thus not vicariously liable for his conduct.

"[T]he existence of an employment relationship, as opposed to an independent contractor relationship, turns on the degree of control exercised by the purported employer over the results produced or the means used to achieve the results," *Kamal*, 2025 WL 3012790, at *3, not on the label it placed in his contract. To assess control, courts look to whether the worker: "(1) worked at their own convenience; (2) was free to engage in other employment; (3) received fringe benefits; (4) was on the employer's payroll; and (5) was on a fixed schedule." *Id.* (citing *Bynog v. Cipriani Grp., Inc.*, 1 N.Y.3d 193, 198 (N.Y. 2003)). "Minimal or incidental control over work product without supervision or input over the means used to complete the work is insufficient to establish a traditional employment relationship." *Id.* (citing *Meehan v. Cnty. of Suffolk*, 144 A.D.3d 640, 641 (2d Dep't 2016)). Summary judgment can be appropriate "where the proof on the issue of control presents no conflict in evidence." *Id.* Such is the case here.

The undisputed record before the Court demonstrates that all of the relevant factors weigh in favor of a finding that Singh was an independent contractor. Starting with the first and fifth factors—whether Singh worked at his own convenience or was employed on a fixed schedule—

Uber has made a convincing showing that it did not control Singh's daily work schedule. In Singh's deposition, he testified that he was not required to work a minimum number of hours and that he normally chose to "work usually like five, six hours or five to eight hours per day based on what I want," since there is "no restriction from [Uber's] side." Singh Dep. at 58:1–17. Additionally, he confirmed that he was able to "accept or reject a ride at [his] own discretion," *id.* at 59:23–25, he could cancel a trip request after he had accepted it, *id.* at 60:3–6, and could take vacation or otherwise take the day off without informing anyone or seeking approval. *Id.* at 61:10–17. Finally, Singh was able to "log in and out of the app whenever" he wished. *Id.* at 58:1–3.

Uber also offered evidence that Singh was able to engage in other employment, the second *Bynog* factor. Uber claims that Singh was "free to use other lead generation services such as the Lyft App or DoorDash App," Dkt. No. 42-2 ("Uber's Rule 56 Statement") ¶ 9, a fact that Singh confirmed in his deposition, though he noted that he prefers to use Uber exclusively. *See* Singh Dep. at 61:18–20 ("Q: Are you able to use any other ride share apps such as Lyft? A: Yes, I can do it, but I only do Uber.").

Finally, the third and fourth factors—whether Singh received any fringe benefits and whether he was on the payroll—also support Uber's contention that he was an independent contractor. Uber asserts that "Mr. Singh did not receive any fringe benefits from [it], such as health insurance, retirement benefits, or vacation." Uber's Rule 56.1 Statement ¶ 10. Plaintiffs do not appear to dispute this. As to how he was compensated, Uber claims that it "did not pay [him] a wage or salary," and that instead, Singh paid a service fee to use the Uber app's lead generation service. *Id.* After a trip is completed, the trip amount is charged to the passenger and disbursed to Singh "less the service fee paid to use the driver version of the Uber app." *Id.* Moreover, Uber does not withhold taxes and Singh was expected to file a Form 1099 to report his income. *Id.*;

Singh Dep. at 62:1–8 (confirming that he filed a 1099 and that Uber did not withhold income tax). Plaintiffs acknowledge that Singh paid his own taxes but maintain that "Uber controls remuneration mechanics by setting trip pricing inputs (time/distance projections), collecting fares, and disbursing payments net of service fees." Dkt. No. 43-1 ("Pls.' Rule 56 Statement ¶ 10"). Although Uber controls the fare calculations and payment terms for rides, it does not follow that he was on the company's payroll. *See Kamal*, 2025 WL 3012790, at *4; *see also Bryson*, 2026 WL 734178, at *5 (finding that Uber driver was an independent contractor on a motion for summary judgment because he was "in business for himself," could provide transportation services anywhere in New York City and adjacent localities, was free to go online or offline and decline trips at his discretion, could use other lead generation services, did not receive fringe benefits, and was not paid a salary but rather paid Uber a service fee for use of the app's lead generation services).

Plaintiffs further dispute the level of control that Singh had over his daily work, emphasizing that in the deposition of Benjamin Caroll, a Senior Manager of Corporate Business Operations for Uber, he described Uber's "features that influence and supervise trip execution," including "in-app projected routes, route guidance, deviation/stop alerts, and Ride Check monitoring." Pls.' Rule 56 Statement ¶ 8. They further dispute Uber's assertion that it did not control the details of Singh's work, claiming instead that Uber dispatches job offers, tracks driver metrics, and provides safety monitoring. *Id.* ¶ 9.

But New York State courts regularly find "similarly situated defendants entitled to judgment as a matter of law when evidence showed that drivers owned and maintained their own vehicles, paid for their own automobile insurance and had discretion to reject dispatches." *Kamal*, 2025 WL 3012790, at *4 (collecting cases). Uber appends to its motion twenty-two cases to that

7

effect. Here, it is undisputed that Singh owned and maintained his own vehicle, Pls.' Rule 56 Statement ¶ 11, and paid for his own car insurance, gas, and other needs. *See id.*

Lastly, Plaintiffs point to the fact that the PAA required Singh to maintain certain licenses to operate his vehicle and subjected him to background checks and a customer rating system. *See* Pls.' Br. at 10–12. But courts have held that these facts do not "mean there are any questions of fact [as to] whether [the driver] was an employee of Uber." *State Farm Auto. Ins. Co.*, 88 Misc. 3d 1201(A), at *3. "Maintaining one's own licenses is indicative one is acting as an independent contractor," and "control over fees as well as the receipt of any feedback does not demonstrate sufficient control over the work to create any questions whether an Uber driver can be classified as an employee." *Id.*

Taken together, "these facts constitute a *prima facie* showing by Uber that [Singh] was an independent contractor, rather than an employee," *Kamal*, 2025 WL 3012790, at *4, a showing Plaintiffs fail to rebut. Accordingly, Uber cannot be held vicariously liable for Singh's alleged actions and its motion for summary judgment as to vicarious liability is granted.

## II. Negligence

Plaintiffs also assert that Uber is directly liable for their injuries under a theory of negligent entrustment of the vehicle to Singh. FAC ¶ 40. Uber maintains that without actual ownership or control of Singh's vehicle, it cannot be held directly liable. Uber's Br. at 22–23. The Court again agrees with Uber. Plaintiffs posit that Uber controlled and supervised Singh's vehicle—by directing him to pick up and drop off passengers and requiring him to use various platforms and conform to policies pursuant to the PAA—and that it was therefore its duty to ensure that the vehicle was not entrusted to unsuitable drivers. *See* FAC ¶¶ 27–39. A theory of negligent entrustment provides for a claim when "[a]n owner of a motor vehicle" was "negligent in

8

entrusting it to a person [they] knew, or in exercise of ordinary care should have known, was not competent to operate it." *Shepard v. Power*, 219 A.D. 3d 769, 772 (N.Y. App. Div. 2023). Although a defendant need not own the vehicle for liability to attach, it must have "had control" over the vehicle. *Palacios v. Aris, Inc.*, 2010 WL 933754, at *9 (E.D.N.Y. Mar. 11, 2010). Here, like in *Kamal v. Singh*, "Uber has established that it could not have entrusted the vehicle to Singh because it did not own or control it." 2025 WL 3012790, at *8 (citing *Bisono v. Taqueria*, 241 A.D.3d 484, 486 (N.Y. App. Div. 2025)); *see also Bryson*, 2026 WL 734178, at *6–7; Pls.' Rule 56 Statement ¶ 11 (confirming that Singh owned his vehicle). Accordingly, Uber is entitled to summary judgment for any claims of primary liability.

## CONCLUSION

For the foregoing reasons, Uber's motion for summary judgment is granted and the Complaint is dismissed with prejudice as to Uber. Moreover, Uber is entitled to costs and disbursements of this action. *See* Fed. R. Civ. P. 54. Uber shall submit an affidavit itemizing those costs within thirty (30) days of the filing of this order. The Clerk of Court is respectfully directed to terminate Uber as a Defendant from this action. Plaintiffs' claims against Singh will proceed. The remaining parties shall file a status letter within thirty (30) days of the filing of this order proposing next steps in this action.

SO ORDERED.

Dated:     June 29, 2026
           New York, New York

_____
Ronnie Abrams
United States District Judge

9